UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| NATALIE A. HEKMAT and MICHAEL HEKMAT, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. TRANSPORTATION SECURITY ADMINISTRATION and JETBLUE AIRWAYS CORPORATION, <br><br> Defendant. | Civil Action No. <br><br> **JUDGE:** <br><br> **JURY TRIAL DEMANDED** <br><br> ELECTRONICALLY FILED |

---

## COMPLAINT

The Plaintiffs, NATALIE A. HEKMAT and MICHAEL HEKMAT, by and through their attorneys, Corbally, Gartland and Rappleyea, LLP, as and for their Complaint against the Defendants, U.S. TRANSPORTATION SECURITY ADMINISTRATION, and JETBLUE AIRWAYS CORPORATION, allege the following:

### THE PARTIES

1.  At all times hereinafter mentioned, the Plaintiffs, NATALIE A. HEKMAT and MICHAEL HEKMAT, were and are still wife and husband, and they were and still are residents of the County of New York, State of New York.

2.  At all times hereinafter mentioned, upon information and belief, the Defendant, U.S. TRANSPORTATION SECURITY ADMINISTRATION ("TSA"), was an agency of the U.S. Department of Homeland Security that has authority over the security of the traveling public in the United States.

3. At all times hereinafter mentioned, upon information and belief, the Defendant, JETBLUE AIRWAYS CORPORATION ("JetBlue"), was and still is a foreign corporation authorized to do business in the State of New York.

## JURISDICTION AND VENUE

4. This action is brought against the Defendants on the basis of bailment, negligence, and breach of contract relating to the Defendants' failure as an insurer of baggage delivered into their exclusive possession, against all losses of whatever kind.

5. This Court has original jurisdiction over the Plaintiffs' cause of action pursuant to Federal Tort Claims Act ("FTCA").

6. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §1331.

7. This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. §1367.

8. Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

9. This Court has supplemental jurisdiction over the Plaintiffs' causes of action arising under New York State statutory and common law pursuant to 28 U.S.C. §1367(a).

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

11. Plaintiffs exhausted their administrative remedies prior to filing suit, as required under the FTCA, by filing a claim against the United States based on the negligent or wrongful acts or omissions of TSA personnel.

12. Plaintiffs' claim was denied (TSA Control Number: 2015022320763) on or about May 1, 2015.

## FACTUAL SUMMARY

13. Upon information and belief, Defendant TSA was created as part of the Aviation and Transportation Security Act, passed by the U.S. Congress, and signed into law by the President, and is now part of the Department of Homeland Security.

14. Upon information and belief, the Defendant TSA conducts all screening of passengers and property at airports in the United States where screening is required; including the John F. Kennedy International Airport (JKF) and the Los Angeles International Airport (LAX).

15. Upon information and belief, TSA supervises uniformed Federal personnel of the TSA and have the power to hire and order the dismissal of any individual working for TSA.

16. Upon information and belief, in order to search passenger baggage for security screening, Defendant TSA will disable padlocks, lockable straps, and luggage that can be opened and relocked by tools and information maintained by the TSA, and TSA either knew or had reason to know from past experience that there is a likelihood of a passenger's baggage becoming separated, lost, or stolen from their own employees negligence or misdeeds, and as such, had an obligation to take all necessary measures to safeguard such baggage so that it is returned to the passenger, to include, but not limited to, placing adequate hiring measures in effect when employing TSA employees, and also ensuring that adequate supervision and security exist to stop a passenger's baggage from being separated, lost, or stolen.

17. Upon information and belief, corporate Defendant JetBlue is a common carrier airline that provides air transport services for traveling passengers and freight.

18. Defendant JetBlue is regarded as an insurer of baggage delivered into its possession against all losses of whatever kind.

19.   Upon information and belief, Defendant JetBlue either knew or had reason to know from past experience that there is a likelihood of a passenger's baggage becoming separated, lost, or stolen, and had an obligation to take all necessary measures to safeguard such baggage so that it is returned to the passenger, to include, but not limited to, informing the passenger of the possibility that a passenger's baggage may become separated, lost, or stolen.

20.   Prior to February 21, 2015, Plaintiffs purchased airline tickets from JetBlue to travel from JFK to LAX, and in consideration for Plaintiffs' purchasing said tickets, Defendant JetBlue impliedly and expressly promised to ensure Plaintiffs' safe travel from JFK to LAX, including, but not limited to, ensuring Plaintiffs property was fully and safely delivered to them at LAX.

21.   On or about February 20, 2015, Plaintiff NATALIE A. HEKMAT packed her jewelry in a brown suede jewelry roll inside a Rimowa hard shell suitcase with integrated lock system.

22.   Inside the jewelry roll, Plaintiff NATALIE A. HEKMAT packed the following pieces of jewelry:

> CARTIER ROUND BRILLIANT RING 2.10 DIAMOND ENGAGEMENT RING ON GOLD BAND – (VALUE $80,000.00)
>
> POMELATTO SABBIA RING IN ROSE GOLD WITH PAVÉ IN BURNISHED ROSE GOLD AND BROWN DIAMONDS (0.68 CT) (VALUE: $ 3,050.00)
>
> POMELLATO SABBIA RING IN ROSE GOLD WITH PAVÉ IN BURNISHED ROSE GOLD AND BLACK DIAMONDS (0.6 CT) (VALUE: $ 2,800.00)
>
> POMELLATO NUDO ROSE GOLD RING WITH WHITE GOLD SETTING AND FACETED AMETHYST (VALUE: $ 2,350.00)
>
> POMELLATO NUDO ROSE GOLD RING WITH WHITE GOLD SETTING AND FACETED PRASIOLITE (VALUE: $ 2,350.00)

> POMELLATO CAPRI ROSE GOLD RING WITH FACETED CUSHION CUT ONYX AND BLACK DIAMONDS (0.68 CT) (VALUE: $3,050.00)
>
> ANTIQUE GOLD RING WITH MODERN DESIGN AND TURQUOISE STONES (APPROXIMATE VALUE: $1000.00)
>
> ANTIQUE GOLD RING WITH MODERN DESIGN AND TURQUOISE STONES (APPROXIMATE VALUE: $1000.00)

23.     The CARTIER ROUND BRILLIANT RING was given to Plaintiff NATALIE A. HEKMAT by her father-in-law in June 2014 as a gift.

24.     The POMELATTO SABBIA RING IN ROSE GOLD WITH PAVE IN BURNISHED ROSE GOLD AND BROWN DIAMONDS was given to Plaintiff NATALIE A. HEKMAT by her mother-in-law in April 2013 as a gift.

25.     The POMELATTO SABBIA RING IN ROSE GOLD WITH PAVE IN BURNISHED ROSE GOLD AND BLACK DIAMONDS was given to Plaintiff NATALIE A. HEKMAT by her mother-in-law in August 2014 as a gift.

26.     The POMELLATO NUDO ROSE GOLD RING WITH WHITE GOLD SETTING AND FACETED AMETHYST was given to Plaintiff NATALIE A. HEKMAT by her husband Plaintiff MICHEAL HEKMAT in September 2014 as a gift.

27.     The POMELLATO NUDO ROSE GOLD RING WITH WHITE GOLD SETTING AND FACETED PRASIOLITE was given to Plaintiff NATALIE A. HEKMAT by her husband Plaintiff MICHEAL HEKMAT in September 2014 as a gift.

28.     The POMELLATO CAPRI ROSE GOLD RING WITH FACETED CUSHION CUT ONYX AND BLACK DIAMONDS was given to Plaintiff NATALIE A. HEKMAT by her husband Plaintiff MICHEAL HEKMAT in February 2014 as a gift.

29. The ANTIQUE GOLD RING WITH MODERN DESIGN AND TURQUOISE STONES were family heirlooms given to Plaintiff NATALIE A. HEKMAT by her family.

30. The ANTIQUE GOLD RING WITH MODERN DESIGN AND TURQUOISE STONES were family heirlooms given to Plaintiff NATALIE A. HEKMAT by her family.

31. As such, Plaintiff NATALIE A. HEKMAT was the sole legal owner of the above mentioned jewelry (hereinafter "property"), and Plaintiff MICHAEL HEKMAT stood to inherit said property from his wife if she predeceased him.

32. On February 21, 2015, Plaintiffs arrived a JFK.

33. Plaintiffs arrived at the JetBlue curbside check-in counter at approximately 7:15 a.m. Eastern Standard Time (EST), and proceeded to check in their luggage at the curbside check-in counter with a JetBlue curbside female check-in agent wearing a JetBlue uniform.

34. At no time did Plaintiffs see a sign warning them that valuables should not be checked in at the curbside check-in due to valuables being separated, lost, or stolen.

35. Plaintiff NATALIE A. HEKMAT ensured her Rimowa hard shell suit case with integrated lock system was locked prior to handing the suitcase to the JetBlue employee - - she had exclusive control over the suitcase and property prior to giving it to the employee.

36. Plaintiffs proceeded through the JFK TSA security and boarded the JetBlue Flight 123, which departed JFK on time at 8:15 a.m. EST, and arrived LAX on time at 11:35 a.m. Pacific Time.

37. Upon arrival at LAX, Plaintiffs immediately inspected their luggage.

38. Plaintiffs opened the Rimowa hard shell suitcase and found that the jewelry roll had been opened and all the property mentioned, above, was missing from the roll. The roll was not taken.

39.     Defendants maintained exclusive control of the Rimowa hard shell suitcase with integrated lock system and all its contents from the curbside check-in at JFK to Plaintiffs' destination at LAX.

## AS AND FOR A FIRST CAUSE OF ACTION

### (BAILMENT)

40.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through 39" of this complaint as if set forth herein at length.

41.     At all times relevant herein, Plaintiff NATALIE HEKMAT was the lawful owner of the property and Plaintiff MICHAEL HEKMAT had a legal interest in the property.

42.     Defendants had a duty to account for the property owned by Plaintiffs, as the property was given to Defendants for its safekeeping during the flight from JFK to LAX.

43.     Plaintiffs gave the temporary placement of control over the property in the suitcase to Defendants for the designated purpose of delivering the property safely to LAX.

44.     Defendant JetBlue received the property in the suitcase from Plaintiffs and placed a tag on the suitcase with a barcode that was generated by JetBlue which designated the final destination for the suitcase to LAX via JetBlue flight 123.

45.     Defendant JetBlue placed the suitcase on a conveyer belt that led to the Defendant TSA's controlled security area.

46.     The suitcase was scanned by laser barcode readers via a computer that contains the information about where the suitcase is supposed to be delivered.

47.     After TSA X-rayed the suitcase, TSA employees opened the suitcase and removed the property from the jewelry roll.

48. TSA employees then closed the suitcase, and placed it on a baggage conveyor system that moved it to Flight 123.

49. Defendants had exclusive possession of the property and had a duty and obligation of delivering the property to Plaintiffs at LAX.

50. Defendants are liable to Plaintiffs for the loss of the property as they both voluntarily assumed and retained custody of the property.

51. Due to this failure, Plaintiffs have been damaged in excess of $95,600.00 in property loss, and other related damages and losses, with interest, as well as additional charges, including costs of legal fees.

## AS AND FOR A SECOND CAUSE OF ACTION

### (NEGLIGENCE)

52. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through "51" of this complaint as if set forth herein at length.

53. Defendants had a duty to exercise reasonable care to protect against reasonably foreseeable criminal conduct of larceny.

54. Defendants had knowledge and notice that items have been stolen from passengers in the past at JFK by TSA employees.

55. Defendants failed to institute adequate security measures to warn Plaintiffs that their property may be stolen or lost, and to protect against such theft by their agents and employees.

56. As such, Defendants are liable to Plaintiffs for the loss of the property.

57. Due to this failure, Plaintiffs have been damaged in excess of $95,600.00 in property loss, and other related damages and losses, with interest, as well as additional charges, including costs of legal fees.

## AS AND FOR A THIRD CAUSE OF ACTION

### (NEGLIGENCE)

58.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through "57" of this complaint as if set forth herein at length.

59.     Defendant TSA had a duty to exercise reasonable care to protect against reasonably foreseeable criminal conduct of larceny.

60.     Defendant TSA had knowledge and notice that items have been stolen from passengers in the past at JFK by TSA employees.

61.     Defendant TSA failed to institute adequate security measures to deter their employees from the crime of larceny and from taking property that did not belong to them.

62.     As such, Defendant TSA is liable to Plaintiffs for the loss of the property.

63.     Due to this failure, Plaintiffs have been damaged in excess of $95,600.00 in property loss, and other related damages and losses, with interest, as well as additional charges, including costs of legal fees.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (FAILURE TO SUPERVISE)

64.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through "63" of this complaint as if set forth herein at length.

65.     Defendant TSA and their employees maintain an employer-employee relationship.

66.     Defendant TSA knew that some employees might take property that did not belong to them, or should have known of such propensity had Defendant TSA conducted an adequate hiring procedure.

67. Defendant TSA hired, supervised and/or retained the employees despite knowing that articles had been stolen in the past.

68. Plaintiffs suffered damages proximately caused by Defendant TSA's negligent hiring or supervision of said employees.

69. The property stolen was committed on premises supervised by Defendant TSA and controlled using Defendant TSA's instrumentalities and employees.

70. As such, Defendant TSA is liable to Plaintiffs for the loss of the property.

71. Due to this failure, Plaintiffs have been damaged in excess of $95,600.00 in property loss, and other related damages and losses, with interest, as well as additional charges, including costs of legal fees.

## AS FOR A FIFTH CAUSE OF ACTION

### (BREACH OF CONTRACT)

72. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through "71" of this complaint as if set forth herein at length.

73. That pursuant to the terms of Plaintiffs agreement with the Defendant JetBlue, Plaintiffs paid for the airline tickets offered by the Defendant JetBlue.

74. That pursuant to the terms of its agreement, Plaintiffs reasonably believed that their property would be safely delivered from JFK to LAX by Defendant JetBlue in a safe condition.

75. The Defendant JetBlue failed to deliver the property to Plaintiffs at LAX.

76. That by reason of the Defendant JetBlue's breach of contract, Plaintiffs have been damaged in excess of $95,600.00 in property loss, and other related damages and losses, with interest, as well as additional charges, including costs of legal fees.

## DEMAND FOR JURY TRIAL

77.     Plaintiffs hereby demand a jury trial.

**WHEREFORE**, Plaintiffs demand a judgment against the Defendants in the sum of $95,600.00 for their causes of action, interest on damages, together with attorneys' fees, costs and disbursements of this action, and such other and further relief as the Court deems just and proper,.

Dated: Poughkeepsie, New York
       October 29, 2015

                    Yours, etc.

                    **CORBALLY, GARTLAND AND RAPPLEYEA, LLP**

By: _____
      KYLE C. VAN DE WATER, Esq. (KV2269)
      Attorneys for Plaintiffs
      35 Market Street
      Poughkeepsie, NY 12601
      Tel. No. (845) 454-1110
      kcvdw@cgrlaw.com